IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00740-GPG

JEREMY GARCIA,

        Applicant,

v.

MATTHEW HANSEN, Acting Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

        Respondents.

---

## ORDER OF DISMISSAL

---

Applicant, Jeremy Garcia, is a prisoner in the custody of the Colorado Department of Corrections.  Mr. Garcia has filed *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) challenging the validity of his conviction and sentence in Weld County District Court case number 02CR1342.  He has paid the $5.00 filing fee.

On June 15, 2015, Magistrate Judge Gordon P. Gallagher ordered Respondents to file a Pre-Answer Response limited to addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies pursuant to 28 U.S.C. § 2254(b)(1)(A) if Respondents intend to raise either or both of those defenses in this action.  On June 24, 2015, Respondents filed their Pre-Answer Response (ECF No. 12) arguing that the Application is barred by the one-year limitation period, and that claim two is unexhausted, and therefore the entire application must be dismissed as a mixed petition.  On September 18, 2015, Mr. Garcia filed his Reply (ECF

No. 16) contending that Respondents are "factually and legally incorrect" as to the timeliness defense.

On September 29, 2015, Magistrate Judge Gallagher ordered Respondents to file a Supplemental Pre-Answer addressing the issue of whether equitable tolling should be applied.  Respondents filed their Supplemental Pre-Answer Response (ECF No. 19) on October 20, 2015, and Mr. Garcia filed his Supplemental Reply (ECF No. 22) on December 21, 2015.

The Court must construe the Application and other papers filed by Mr. Garcia liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110. For the reasons stated below, the Court will dismiss the action as time-barred.

## I.  Background

The Colorado Court of Appeals described the relevant factual and procedural background of Mr. Garcia's criminal case as follows:

> During a party at an apartment, defendant's friend, Walter Herrera, argued with another partygoer on the balcony.  When the argument escalated, defendant and Herrera each pulled out a gun and defendant's other friend, Jasper Garcia, pulled out a knife.  Defendant and his two friends were asked to leave.  After he reached the parking lot, defendant fired five shots from the gun.  A bullet from one of the shots killed the victim, who had been standing on the balcony.

> A jury convicted defendant of second degree murder, and the court sentenced him to forty-eight years in the custody of the Department of Corrections.  On appeal, a division of this court upheld defendant's conviction and sentence.  *See People v. Garcia,* (Colo. App. No. 05CA2246, Jan. 24, 2008) (not published pursuant to C.A.R. 35(f) (*Garcia I*).

In September 2008, defendant filed a pro se Crim. P. 35(c) motion, arguing that (1) the trial court denied him the right to present a defense when it did not allow counsel to impeach the prosecution's witnesses with evidence of gang activity; (2) he was denied the right to effective assistance of counsel based on (a) the number of counsel appointed to represent him, (b) trial counsel's failure to use the defense strategy they had agreed on, (c) trial counsel's failure to move for a mistrial or request a curative instruction after the prosecution showed morgue and crime scene photographs to the jury in the presence of the victim's two children, (d) trial counsel's failure to request a jury instruction on crime of violence, and (e) appellate counsel's failure to "fully and thoroughly . . . litigate the claims [in *Garcia I*] and the claims herein stated"; (3) he was denied the right to a jury of his peers because the jury was not representative of a "cross-section of the community"; and (4) the trial court erred when it (a) failed to instruct the jury on "aggravating circumstances/sentences," (b) did not enforce the instruction that required the jury to refrain from talking about the case outside the deliberation room, (c) allowed the prosecutor to "badger and discredit" his expert witness, and (d) failed to "marshall[] the testimony of the state witnesses who went from telling detectives originally that the shooting was involuntary, to intentional during trial."

After the court appointed counsel, defendant supplemented his motion and argued that trial counsel was ineffective when he (1) conceded every element of the crime of second degree murder except the culpable mental state and then presented the case to the jury as if the culpable mental state of the crime was intentionally or with intent rather than knowingly; (2) failed to assert the affirmative defense of self-defense because he misunderstood the requirements for raising that defense; and (3) made cumulative errors throughout the trial, including his failure to (a) object to the admission of a photograph of the victim pregnant with her second child, (b) properly impeach a witness, (c) endorse the investigator as a witness at trial, and (d) competently lay a foundation to qualify the defense expert as an expert witness.

The district court denied defendant's motion without a hearing, finding that (1) although trial counsel misstated it at times during the opening statement and closing argument, counsel understood the applicable culpable mental state and "[t]he majority of [trial counsel's] closing argument . . . accurately addressed" whether defendant "knowingly" caused the death of a person; (2) there was no support in the record for the assertion that trial counsel failed to raise the affirmative defense of self-defense based on a misunderstanding of that defense; (3) trial counsel's failure to raise self-defense was trial strategy; (4) based on the evidence at trial, it was "extremely unlikely that the presentation of the affirmative defense of self-defense would have led to a different result"; (5) trial

counsel's strategy "resulted in effective representation given the evidence" at trial; and (6) based on its review of the record as a whole, it could not find that trial counsel was not adequately prepared.

(ECF No. 12-4, at 3-6, *People v. Garcia*, No. 11CA2409, slip op. at 1-4 (Colo. App. May 16, 2013)).  The Colorado Court of Appeals affirmed the trial court's denial of the postconviction motion.  (*Id.*).  On February 18, 2014, the Colorado Supreme Court denied Mr. Garcia's petition for writ of certiorari.  (*See* ECF No. 12-2.)

Mr. Garcia initiated the instant action on April 9, 2015 by filing the § 2254 Application asserting the following claims for relief:

> (1) "the defendant was sentenced in violation of the U.S. Const. by the lower court making findings of fact and conclusions of law that were required to be made by the jury when a sentence including aggravating and mitigating factors are needed (Blakely/apprendi)."
>
> (2) "the defendant was deprived of effective assistance of counsel by counsels conduct in confessing the elements of the crime in the presence of the jury. Counsel then improperly presented evidence which showed a misunderstanding of the law relevant to the theory of the defense."

(ECF No. 1, at 5-6).

## II.  One Year Limitation Period

As noted above, Respondents argue that the application is untimely under 28 U.S.C. § 2244(d).  That statute provides:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
>> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B)  the date on which the impediment to filing an application created by State action in

> violation of the Constitution or laws of the
> United States is removed, if the applicant was
> prevented from filing by such State action;
>
> (C) the date on which the constitutional right
> asserted was initially recognized by the
> Supreme Court, if the right has been newly
> recognized by the Supreme Court and made
> retroactively applicable to cases on collateral
> review; or
>
> (D) the date on which the factual predicate of
> the claim or claims presented could have been
> discovered through the exercise of due
> diligence.
>
> (2) The time during which a properly filed application for
> State post-conviction or other collateral review with respect
> to the pertinent judgment or claim is pending shall not be
> counted toward any period of limitation under this
> subsection.

28 U.S.C. § 2244(d).

In order to apply the one-year limitation period the Court first must determine the date on which Mr. Garcia's conviction became final. *See* 28 U.S.C. § 2244(d)(1)(A). In general, a conviction becomes final after the United States Supreme Court affirms a conviction on the merits or denies review following a decision by the state court of last resort on direct appeal, or, if no petition for writ of certiorari is filed, when the time for seeking such review expires. *Locke v. Saffle,* 237 F.3d 1269, 1273 (10th Cir. 2001).

The Colorado Supreme Court denied certiorari review on direct appeal on July 14, 2008. (*See* ECF No. 12-1, at 19; ECF No. 12-9, at 2). Pursuant to Rule 13.1 of the Rules of the Supreme Court of the United States, Mr. Garcia had ninety days to seek review in the United States Supreme Court, but he did not do so. Therefore, the Court agrees with Respondents that Mr. Garcia's conviction became final on October 13,

5

2008, when the time for filing a petition for writ of certiorari in the United States Supreme Court expired.[1]

Mr. Garcia disputes that his conviction became final in October 2008.  Instead, he argues in the Supplemental Reply that his sentence and conviction were not affirmed as a matter of law until October 27, 2015, when the state court entered an order that the conviction was affirmed by operation of law in response to Mr. Garcia's "Petition to Affirm Conviction."  (*See* ECF No. 22; *see also* Colorado State Courts Data Access Website record, Weld County Dist. Court Case No. 02CR1342, as of February 5, 2016). The Court has reviewed the state court register of actions and finds that Mr. Garcia's position is without merit.  As explained above, the Court finds that Mr. Garcia's conviction became final on October 13, 2008, when time expired to file a petition for writ of certiorari in the United States Supreme Court.  *See Locke,* 237 F.3d at 1273; *see also Clay v. United States,* 537 U.S. 522, 524-25 (2003) (rejecting the issuance of the appellate court mandate as the triggering date, and holding that a conviction becomes final when the time expires for filing a petition for certiorari contesting the affirmation of the conviction); *Crutcher v. Cockrell,* 301 F.3d 656, 657 (5th Cir. 2002) (Section "2244(d)(1)(A) looks to when a judgment becomes final, not when the petitioner becomes aware that the judgment is final").

Mr. Garcia does not allege in his pleadings that there are any constitutional rights newly recognized by the Supreme Court that apply to his claims.  § 2244(d)(1)(c).  Mr. Garcia also does not assert that he could not have discovered the factual predicate of

---

[1]The 90th day after July 14, 2008, was Saturday, October 11, 2008, which means the filing deadline extended two additional days until Monday, October 13, 2008.  *See* Sup. Ct. R. 30.1.

his claim through the exercise of due diligence.  § 2244(d)(1)(D).

In the Reply, Mr. Garcia asserts that "following the denial of the Writ of Certiorari in the Colorado Supreme Court the defendant has not received a mandate from the court as is the common practice following denial of said Writ." (*See* ECF No. 16, at 1). More specifically, Mr. Garcia argues that he has not received a "mandate verifying the denial of the writ of cert. Thus at most the petition is premature . . . the court failed to notify the applicant thereafter how was he supposed to file his petition prior to that . . . he is still awaiting verification from the District Court to affirm the denial and conviction." (*Id.*).  Mr. Garcia further contends that "prior to the expiration of the 90 time frame seeking review by the U.S. Supreme Court defendant filed his postconviction motion thus, the time to seek review in that court re-commensed [sic] following the denial of the Writ of Certiorari.  However once again the court failed to inform the pro se applicant." (*Id.,* at 2).  Construing the allegations liberally, Mr. Garcia appears to argue that the one-year limitation period did not begin to run when his conviction became final because the delay in issuing the mandate to Mr. Garcia is a state-created impediment to filing his federal habeas application.  *See* 28 U.S.C. § 2244(d)(1)(B).

Mr. Garcia's allegations regarding his lack of receipt of the "mandate verifying the denial of the writ of cert." do not demonstrate that he faced an impediment created by unconstitutional state action that actually prevented him from filing the Application in this Court.  *See e.g., Madden v. Thaler,* 521 Fed. App'x 316, 321 (5th Cir. 2013) (holding that 18-month delay in issuing mandate did not constitute state-created impediment that actually prevented applicant from filing a timely federal habeas application); *Troutt v. Jones,* 288 Fed. App'x 452, 453 (10th Cir. 2008) (rejecting applicant's argument that the

7

limitation period runs from the date of the state court mandate because the ninety-day period to file a petition with the Supreme Court runs from the date of the entry of the judgment, not the issuance date of the mandate); *see also Gonzalez v. Thaler,* — U.S. — , 132 S. Ct. 641, 655-56 (2012) (stating that a petitioner facing a lengthy delay in the issuance of a mandate could file a protective federal habeas application and seek a stay).  Moreover, courts have "rejected the argument that the one-year limitation period only begins to run from the date the petitioner actually received notice that his direct review has concluded."  *San Martin v. McNeil,* 633 F.3d 1257, 1267 (11th Cir. 2011) (finding no support for applicant's claim that one-year limitation period did not begin to run until he received actual notice of the denial of his petition for writ of certiorari from his convictions and sentence); *Sigala v. Bravo,* 656 F.3d 1125, 1127-28 (10th Cir. 2011) (applicant's lack of notice that direct review has concluded did not reset limitations period because limitation period begins to run when a final judgment is filed in court); *Rouse v. Lee,* 339 F.3d 238, 245 (4th Cir. 2003) ("The limitations period of the AEDPA, however, runs from 'the date on which the judgment became final,' not from the date on which [the applicant] was served with (or, in this case, merely received) notification of the final judgment.").  For example, in *San Martin*, the Eleventh Circuit held that the one-year limitation period began to run when the Supreme Court's denial of the prisoner's petition for review was filed, not when the defendant received a copy of the denial by mail, two weeks later.  633 F.3d at 1266-67.

The record indicates that Mr. Garcia was aware that his petition for writ of certiorari was denied by the Colorado Supreme Court on or around July 14, 2008.  First, Mr. Garcia alleges in the Application that the Colorado Supreme Court issued a

"decision without published opinion" on July 21, 2008 in his direct appeal.  (ECF No.  1, at 3).  Second, on September 4, 2008, Mr. Garcia filed his postconviction motion in which he alleged that the Colorado Supreme Court denied his appeal on July 14, 2008 in case number 08SC189.  (ECF No. 12-8, at 2).  Thus, Mr. Garcia's own allegations contradict his claim that he lacked notice that his conviction was affirmed on direct appeal after the Colorado Supreme Court denied his petition for certiorari. Therefore, the Court cannot find that § 2244(d)(1)(B) applies to reset the limitation period in this case.

As stated above, for purposes of § 2244(d)(1)(A), a state conviction becomes final when the time for seeking direct review expires, regardless of when the court of appeals issues its mandate.  *See Troutt,* 288 Fed. App'x at 453 (rejecting applicant's argument that the limitation period runs from when the state court mandate was issued and citing Sup. Ct. R. 13(3), which states that the ninety-day period to file a petition with the Supreme Court runs from the date of the entry of the judgment, not the issuance date of the mandate).  As a result, the Court finds that the one-year limitation period began to run on October 14, 2008, the day after Mr. Garcia's conviction became final. *See United States v. Hurst,* 322 F.3d 1256, 1261-62 (10th Cir. 2003) (one-year limitation period commences the day after expiration of the time for seeking review).  Mr. Garcia did not initiate this action within one year after October 14, 2008.  Therefore, the next question the Court must address is whether the one-year limitation period was tolled for any period of time.

Pursuant to 28 U.S.C. § 2244(d)(2), a properly filed state court postconviction motion tolls the one-year limitation period while the motion is pending.  An application

for postconviction review is properly filed within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  These requirements include:

> (1) the place and time of filing; (2) the payment or waiver of any required filing fees; (3) the obtaining of any necessary judicial authorizations that are conditions precedent to filing, such as satisfying any filing preconditions that may have been imposed on an abusive filer; and (4) other conditions precedent that the state may impose upon the filing of a post-conviction motion.

*Habteselassie v. Novak*, 209 F.3d 1208, 1210-11 (10th Cir. 2000) (footnote omitted).

The issue of whether a state court postconviction motion is pending for the purposes of § 2244(d)(2) is a matter of federal law, but "does require some inquiry into relevant state procedural laws."  *See Gibson v. Klinger*, 232 F.3d 799, 806 (10th Cir. 2000).  The term "pending" includes "all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application."  *Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir. 1999).  Furthermore, "regardless of whether a petitioner actually appeals a denial of a post-conviction application, the limitations period is tolled during the period in which the petitioner *could have* sought an appeal under state law."  *Gibson*, 232 F.3d at 804.

Respondents concede that the one-year limitation period was tolled pursuant to § 2244(d)(2) while Mr. Garcia's postconviction motion, filed on September 4, 2008, was pending.  (*See* ECF No. 12, at 7-8).  The motion was pending until the Colorado Supreme Court denied certiorari in the postconviction proceedings on February 18,

2014.  (*See* ECF No. 12-2).  Therefore, the one-year limitation period was tolled from September 4, 2008 until February 18, 2014.  As such, 365 days remained when the one-year limitation period began to run on February 19, 2014, and the one-year limitation period ran unabated until it expired on February 19, 2015.  *See Hurst,* 322 F.3d at 1259-61 (one-year limitation period ends on the one-year anniversary of the date upon which the period began to run).  Therefore, the instant Application, filed on April 9, 2015, appears to be time-barred by approximately seven weeks.  Moreover, even assuming that Mr. Garcia was entitled to the benefit of the prison mailbox rule, *Houston v. Lack,* 487 U.S. 266 (1988), the Application would be considered filed on March 29, 2015, which is still untimely by more than five weeks.

In addition to statutory tolling under § 2244(d)(2), the one-year limitation period may be tolled for equitable reasons.  *Holland v. Florida*, 560 U.S. 631, 649 (2010). Generally, equitable tolling is appropriate if the petitioner shows both "that [s]he has been pursuing h[er] rights diligently" and "that some extraordinary circumstance stood in h[er] way" and prevented her from filing in a timely manner.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998).  A showing of excusable neglect is not sufficient to justify equitable tolling.  *See Gibson*, 232 F.3d at 808.  Furthermore, in order to demonstrate he pursued his claims diligently, the petitioner must "allege with specificity 'the steps [s]he took to diligently pursue h[er] federal claims.'"  *Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008) (quoting *Miller*, 141 F.3d at 978).

A prisoner's lack of knowledge that the state courts have reached a final resolution of his case can constitute an "extraordinary circumstance" that warrants

equitable tolling if the prisoner has acted diligently in the matter. *See e.g., Woodward v. Williams,* 263 F.3d 1135, 1143 (10th Cir. 2001).  Mr. Garcia's allegations regarding his lack of knowledge that his conviction was affirmed, however, fail to justify equitable tolling.  Mr. Garcia asserts that he did not receive a mandate verifying the denial of his petition for writ of certiorari, and thus, he was not aware that his conviction and sentence was affirmed on direct appeal.  As explained above, the record refutes this assertion.  Mr. Garcia was aware that the Colorado Supreme Court denied certiorari review, because he alleged in his September 2008 postconviction motion that the Colorado Supreme Court denied his appeal on July 14, 2008 in case number 08SC189. (ECF No. 12-8, at 2).  In addition, the Colorado Supreme Court order denying certiorari review was sent to Mr. Garcia's appellate counsel.  (*See* ECF No. 12-9, at 2).  *See United States v. Glenn,* 61 Fed. App'x 571, 572 (10th Cir. 2003) (declining to apply doctrine of equitable tolling based on attorney's failure to notify applicant of court's decision on direct appeal); *LaCava v. Kyler,* 398 F.3d 271, 276 (3d Cir. 2005) (attorney's failure to communicate notice of a state court order is not, by itself, sufficiently "extraordinary" to justify equitable tolling); *see also Sigala,* 656 F.3d at 1127 (recognizing that state courts did not violate the Constitution by communicating with defendants through counsel).  Thus, Mr. Garcia was on notice that his conviction and sentence were affirmed by the state courts on direct appeal.

Moreover, even if there had been a substantial dely in Mr. Garcia receiving the state court of appeals mandate affirming his sentence and conviction, Mr. Garcia fails to meet his burden of proof in demonstrating that he pursued the process with reasonable diligence. *See e.g., Scott v. Saffle,* 8 Fed. App'x 900, 902 (10th Cir. 2001) (finding no

diligence in inmate's efforts to discover that his motion for postconviction relief was denied). The state court record reflects that on October 27, 2015, Mr. Garcia filed a "Petition to Affirm Conviction," apparently seeking verification that his conviction and sentence were affirmed. (*See* Colorado State Court Data Access Website record, Weld County Dist. Court Case No. 02CR1342, as of February 5, 2016). Mr. Garcia, however, took no action to inquire about the status of his conviction and sentence until October 27, 2015, which was seven years after he knew that his petition for writ of certiorari was denied by the Colorado Supreme Court in his direct appeal proceedings. Thus, Mr. Garcia has failed to demonstrate the equitable toling is appropriate based on his alleged lack of receipt of the mandate affirming his conviction and sentence. *See e.g., Glenn,* 61 Fed. App'x at 572 (applicant was not reasonably diligent in pursuing his claims and, as a result, was not entitled to the benefit of equitable tolling).

In conclusion, the Application is barred by the one-year limitation period in § 2244(d) and will be dismissed for that reason. The Court also certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal she also must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24. Accordingly, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is dismissed as untimely. It is

FURTHER ORDERED that no certificate of appealability shall issue because Applicant has failed to show that jurists of reason would find it debatable that the district court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  It is It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied without prejudice to the filing of a motion seeking leave to proceed *in forma pauperis* on appeal in the United States Court of Appeals for the Tenth Circuit.

DATED at Denver, Colorado, this   12th   day of   February   , 2016.

BY THE COURT:


   s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court